IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHEN WAYNE LARKIN,

       Plaintiff,

  v.                                    Case No. 07-3325-SAC

ROGER WERHOLTZ, Secretary
of Corrections, et al.,

       Defendants.

MEMORANDUM AND ORDER

This case comes before the court following the court's order to show cause why this action should not be dismissed for failure to state a claim of federal constitutional violation. Plaintiff has timely filed a response (Dk. 3) and a supplemental response (Dk. 4) to the show cause order.

Plaintiff contends that as an inmate, he is being unconstitutionally forced to save ten percent of the money he acquires "from outside sources" as part of a mandatory savings program which distributes such funds to inmates upon their release. Plaintiff's complaint alleges that the seizure of his money for the mandatory savings account violates the due process clause of the Fourteenth Amendment as to all inmates, but particularly as applied to plaintiff and similarly

situated inmates who are either on death row or have sentences of such a length

that they have no real hope of ever being released from prison.  The court

incorporates by reference its show cause order, Dk. 2.

**Standard of Dismissal**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must

contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." In 2007, the Supreme Court announced that to withstand a

motion to dismiss, a complaint must contain enough allegations of fact "to state a

claim to relief that is plausible on its face." *Atlantic Corp. v. Twombly*, --- U.S. ----,

----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).        Under this revised

standard, "the mere metaphysical possibility that some plaintiff could prove some

set of facts in support of the pleaded claims is insufficient; the complaint must give

the court reason to believe that this plaintiff has a reasonable likelihood of

mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C. v.*

*Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007). The allegations must be enough

that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a

claim for relief. *Robbins v. Oklahoma*, __ F.3d __, 2008 WL 747132, 3 (10th Cir.

2008).

"Plausibility" in this context must refer to the scope of the allegations in a

complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Id.* at 1974.

*Robbins*, 2008 WL 747132 at 3 (10th Cir. 2008).

**Eighth Amendment**

Plaintiff's response asserts, for the first time, that the mandatory savings account violates his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff contends that it is completely unusual and illogical for defendants to seize money for distribution to an inmate upon his release, when defendants know that the inmate will never be released. This claim was not contained in plaintiff's original complaint, and fails for the additional reason that it fails to state a claim upon which relief could be granted. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). *See Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981). Only deprivations of essential human needs trigger the Eighth Amendment

proscription against cruel and unusual punishment, *Gillihan v. Shillinger*, 872 F.2d 935, 940-01 (10th Cir.1989) (holding prison's freezing of inmate's account was not cruel and unusual punishment in violation of Eighth Amendment), and plaintiff has alleged none.

**Fourteenth Amendment**

Plaintiff's due process claim, included in his complaint, alleges a property interest in his trust account money which comes from sources outside the prison, such as gifts from friends and family. To evaluate a procedural due process claim, the court asks whether the individual "possess [ed] a protected property interest to which due process protection was applicable," and whether an appropriate level of process was afforded. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir.2006).

**Protected property interest**

Plaintiff contends that *Ellibee*, which prompted the court's show cause order, was wrongly decided.  In *Ellibee v. Simmons*, 32 Kan.App. 2d 519 (2004), *rev. den*, (May 25, 2004), *cert. denied*, 543 U.S. 92 (2004), the Kansas Court of Appeals examined the same regulation challenged by plaintiff, IMPP 04-103. There, as here, the inmate claimed the regulation was unconstitutional and should exempt death row inmates and those with sentences extending beyond 75 years of

4

age. The Court found that the regulation was within the discretion of prison officials, contained no constitutional violations in its operation, and did not violate the inmate's constitutional rights.

Plaintiff believes *Ellibee* erred in failing to recognize a property interest in the ten percent of the inmate's money placed into the mandatory savings account. The court disagrees. *Ellibee's* analysis evidences that it assumed a protected property interest in those funds, but found the regulation valid because it was reasonably related to legitimate peneological interests. *See Ellibee*, 32 Kan. App. 2d at 523.

Plaintiff additionally contends that *Ellibee's* reliance upon *Cumbey v. State*, 699 P.2d 1094, *cert. denied sub nom, Jackson v. Oklahoma*, 474 U.S. 838 (1985), was erroneous because the source of the challenged funds was different: *Cumbey* examined monetary credits which inmates earned from prison employment industries, whereas *Ellibee* examined actual monetary gifts which inmates received from outside the facility as well. It is true that *Cumbey* viewed the inmates' mandatory savings  accounts as "conditional credits of potentially accessible funds, rather than vested property interests." *Ellibee*, 32 Kan. App. 2d at 523, quoting *Cumbey*, 699 P.2d at 1097-98. But *Ellibee* cited *Cumbey* as merely "helpful," and not as determinative on the issue, and did not base any finding regarding the

5

existence of a protected property interest, or lack thereof, on *Cumbey*.

Whether inmates have a protected property interest in the money given them from outside sources, or in the use of that money while incarcerated, has not been squarely decided in this jurisdiction. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Tenth Circuit has stated that inmates have a "property interest" in receiving money from "friends and family outside the prison." *Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir.1989) (per curiam). The Tenth Circuit later noted that this "statement appears to be dicta, however, because it is not apparent from the decision that any monies from outside sources were at issue in that case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006). The Tenth Circuit has also declined to determine whether an inmate has a property interest in his prison wages. *See Ellibee v. Simmons*, 201 Fed.Appx. 612 (10th Cir.2006) ("assuming without deciding" that the inmate had a protected property interest in his prison wages, where he challenged a regulation requiring five percent of his gross wages to be paid to a crime victims compensation fund), affirming *Ellibee v. Simmons*, 2005 WL 1863244 (D. Kan. 2005) (finding "to the extent plaintiff has a

protected interest in his wages, that interest would extend only to those wages
remaining in his account after all mandated deductions are made.")

Other circuits have found that inmates have a protectable property interest in
funds received from outside sources.  *See e.g.*, *Wright v. Riveland*, 219 F.3d 905,
913 (9th Cir.2000)*; Murray v. Dosal,* 150 F.3d 814 (8th Cir.1998); *see also Parrish
v. Mallinger*, 133 F.3d 612, 614 (8th Cir.1998) ("Defendants concede, as they
must, that [plaintiff] has a property interest in the money his mother sent him that
is protected by the Due Process Clause of the Fourteenth Amendment.").  *See
generally Hampton v. Hobbs*, 106 F.3d 1281, 1284 (6th Cir.1997) (finding
"[p]risoners do have a protected interest in their money.") *But see Wolfe v.
Litscher*, 2003 WL 23218349, 1(W.D.Wis. 2003) (noting its prior finding "that
although petitioner has a protected property interest in the funds on deposit in his
prison account, including money sent to him from sources outside the prison, he
does not have a protected property interest in receiving prison wages or controlling
the use of funds in his account.")

 Given the lack of definitive case law on this topic, and the possible
distinctions between money given to an inmate from outside sources and money
earned from prison wages, the court will assume without deciding that plaintiff has
a protected property interest in the money he acquires "from outside sources"

7

which is placed in the mandatory savings fund.

**Atypical and significant hardship**

Plaintiff additionally claims that *Ellibee* erred in failing to apply the four-pronged analysis of *Turner v. Safley*, 482 U.S. 78 (1987). This four-factor test asks (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives. Although federal courts often apply the *Turner* test, s*ee e.g., Kay v. Bemis*, 500 F.3d 1214 (10th Cir.2007); *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir.2004), that test is not applied in examining alleged property or liberty deprivations. Instead, the court "review[s] property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th. Cir.1999), *cert. denied*, 531 U.S. 1081(2001) (quoting *Sandin v. Conner*, 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). "[T]he touchstone of the inquiry ... is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the

ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).

In *Sandin v. Conner*, the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293. The Tenth Circuit subsequently ruled that property interest claims by inmates are also to be reviewed under *Sandin's* analysis. *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir.1999). *See Steffey v. Orman*, 461 F.3d 1218 (10th Cir. 2006) (finding inmate had no property right protected by the Fourteenth Amendment to receive a contraband money order while in prison, stating, "prison officials at OSP have a legitimate interest in controlling both the amount and source of funds received by inmates.")

Plaintiff has presented no evidence or authority for the proposition that the deprivation here was an "atypical and significant hardship" that subjected him to conditions any different from those ordinarily experienced by inmates serving their sentences in the customary fashion. The regulation itself applies to all inmates, and is a typical type of restraint imposed on the prison population. Limitations on inmates' use and receipt of money while in prison are ordinary incidents of prison

life and are well within the bounds of what a sentenced inmate may reasonably

expect to encounter as a result of his or her conviction.

Additionally, it is well-established that prisons have broad discretion in

regulating the entry of materials into prison. *See Steffey*, 461 F.3d at 1223. As

stated in *Ellibee*:

> The Department of Corrections (DOC) has the full power and authority to
>
> manage the state's prisons, to encourage healthy and capable inmates in
>
> prison labor, and to provide compensation in its best judgment. Requiring
>
> 10% of incoming funds to be placed in the inmate's trust account does not
>
> violate Ellibee's constitutional rights. The DOC has a sufficient rationale for
>
> withholding the money and making it available to Ellibee upon his release or
>
> passing it through his estate upon his death. ... The DOC also has legitimate
>
> reasons to prevent the free flow of currency within the prison system.

*Ellibee*, 32 Kan. App. 2d at 523. The court finds that the DOC has a sufficient

rationale for withholding some of plaintiff's outside money and making it available

to plaintiff upon his release or passing it to his estate upon his death. The court is

"mindful of the primary management role of prison officials who should be free

from second-guessing or micro-management from the federal courts." *Estate of*

*DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th

10

Cir.2007) (citation omitted).

Importantly, any deprivation to plaintiff is insignificant. Ten percent of the money plaintiff receives from outside sources is placed in plaintiff's mandatory savings account, but the money still belongs to the plaintiff, and will benefit either him or his estate.  He has thus not been permanently deprived of the value of the money that is placed into the mandatory savings account, but is merely denied the use of a small percentage of the money given to him during his period of incarceration.  No violation of a constitutional magnitude can be shown.

Given the validity of the regulation in IMPP 04-103, and the typical, insignificant nature of the deprivation, the court finds that plaintiff's claim that defendants violated his rights under the due process clause of the Fourteenth Amendment shall be dismissed.

IT IS THEREFORE ORDERED that plaintiff's action is dismissed for failure to state a claim of federal constitutional violation.

Dated this 28th day of March, 2008.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge